BOARD OF EDUCATION OF THE CITY OF ST.
   LOUIS ex rel. JOHNSON HEAT REGULAT-
   ING COMPANY, Respondent, v. UNITED
   STATES FIDELITY & GUARANTY COM-
   PANY, Appellant.

St. Louis Court of Appeals, July 2, 1912.

1. PRINCIPAL AND SURETY: Building Contracts: Schools:
   Subletting Contract: Liability of Surety.    A firm of contrac-
   tors contracted to construct a school building and install a
   heating system therein, and subsequently the partners trans
   ferred their partnership interests to a corporation, in con-

sideration of certain shares of its capital stock issued to them, which corporation, with the acquiescence of all parties, took over the work called for by the contract, and contracted with another company to install the heating system, which, after installation, was accepted by the board of education. *Held*, that the legal effect of the transactions was a subletting of the original contract to the corporation and a subletting by the corporation to the company installing the heating system, and that the latter company was not a mere volunteer, and hence was entitled to maintain an action on the bond, given by the original contractors, as required by section 6761, Revised Statutes 1889, for the unpaid balance due for installing such system.

2. ———: ———: ———: ———: ———. While the liability of a surety on a building contractor's bond extends only to those in privity by contract with the original contract, this privity need not be direct, but may be through a contract with a subcontractor, if the labor and material furnished thereunder fall within the original contract.

3. ———: ———: ———: ———: ———. Where a building contractor, who had contracted to build a school building and install a heating system therein, sublet the contract, and the subcontractor sublet the installation of the heating system, there was a privity of contract between the company installing the heating system and the original contractor, and the sureties on the original contractor's bond were liable for the cost of installing the heating system.

4. INSTRUCTIONS: Trial Before Court: Function of Instructions. Where the trial is before the court, declarations of law are only of service as indicating the theory upon which the court tried the case.

5. PRINCIPAL AND SURETY: Building Contracts: Liability of Surety: Knowledge of Surety. It is not material to the liability of the surety upon a building contractor's bond, for labor and material furnished under a contract with the sub-contractor, whether the surety did or did not know who the subcontractors were to be, at the time of the execution of the bond.

6. ———: ———: Schools: Instructions. In an action on a bond given to a board of education by a contractor who had entered into a contract to erect a school building and install a heating system therein, conditioned as required by section 6761, Revised Statutes 1909, for the cost of installing the heating system, under a contract made by plaintiff with the subcontractor, to whom the entire contract was sublet by the original contractor, *held* that a declaration of law given by the court

(the case being tried without a jury), which is epitomized in the opinion, indicates that the court, in making its finding, followed the correct theory of law.

7. ——: ——: ——: Action on Bond: Parties. A materialman may maintain an action against the surety in a bond given by a building contractor pursuant to section 6761, Revised Statutes 1899, without making the contractor a party defendant.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Williams,* Judge.

Affirmed.

*Edw. C. Kehr* for appellant.

(1) The question involved in this case was fully considered and determined by this court in Board of Education ex rel. v. Fidelity & Guaranty Co., 155 Mo. App. 109. (2) The distinction sought to be made by the respondent between the former case and this, is not supported by the evidence and is not good in law. It is clear that the relator, the Johnson Heat Regulating Company, is not a subcontractor under Kohlbry and DeLaney, copartners doing business as the National Engineering & Construction Company; and it is equally clear that a surety is bound only for the acts of his principal, and cannot be held for the acts of a volunteer undertaking to carry out the contract of the principal, nor for the acts of the principal's successor in business, if he should undertake to transfer the business. As the evidence in this case establishes beyond cavil that the Johnson Heat Regulating Company is not a subcontractor under Kohlbry and DeLaney, it follows that the plaintiff cannot recover. (3) Where a party becomes a surety for costs in the case of A. v. B., he is not held as surety after C. is substituted as plaintiff in the place of A. Ex parte James, 59 Mo. 280. A surety for one is not. after he takes a partner, liable for their joint debts,

Mallory v. Brent, 75 Mo. App. 473. The contract into which the surety has entered cannot be varied without his consent; and if it is so varied, he will be discharged. Schuster v. Weiss, 114 Mo. 158; Burley v. Hitt, 54 Mo. App. 272; Higgins v. Harvester Co., 181 Mo. 300. It cannot be claimed that when the appellant became surety for Kohlbry and DeLaney, it contemplated that it was also becoming surety for the Advance Engineering & Construction Company, a corporation not then in existence and in no wise connected with the contract between the board of education and Kohlbry and DeLaney. "No one has the right of action on an agreement except those who are in the minds of the parties as the beneficiaries of its provisions." State ex rel. v. Loomis, 88 Mo. App. 506; Howsman v. Water Co., 119 Mo. 304; State v. Railroad, 125 Mo. 617.

*S. C. Rogers* for respondent.

(1) This case is identical and practically a companion case to that of Board of Education ex rel. v. Fidelity & Guaranty Co., 155 Mo. App. 109. It is also determined by the following cases: Lime & Cement Co. v. Wind, 86 Mo. App. 163; State ex rel. v. Mfg. Co., 149 Mo. 212; Brick & Terra Cotta Co. v. Hull, 49 Mo. App. 433; Board of Education v. Wood, 77 Mo. 197; Devers v. Howard, 144 Mo. 671; Bruce v. Berg, 8 Mo. App. 204; Martin v. Whites & Cox, 128 Mo. App. 125; Forge Co. v. Mfg. Co., 105 Mo. App. 484; Kirkwood v. Byrne, 146 Mo. App. 481; School Dist. v. Beggs, 147 Mo. App. 186; Henry Co. v. Salmon, 201 Mo. 162. (2) Instructions given for relator are correct and even if not, there is no dispute as to facts, the case being merely a question of law and error in instruction is not grounds for a reversal. McQuillin's Instructions to Juries, sec. 8, p. 6; sec. 302, pp. 239-40-41; sec. 304, pp. 241-42-43; Bowman & Co.

v. Lickey, 86 Mo. App. 63. (3) It was not necessary to make Kohlbry & DeLaney and the Advance Company a party to this action, the contract being joint and several. Sec. 2769, R. S. 1909; Manny v. Surety Co., 103 Mo. App. 716.

REYNOLDS, P. J.—We have in this case the same contract and bond which were before us in the case of the Board of Education ex rel. Phillip Carey Co. v. United States Fidelity & Guaranty Co., 155 Mo. App. 109, 134 S. W. 18, hereafter referred to for brevity as the Carey case. In the case at bar, as in the Carey case, a partnership composed of Kohlbry and DeLaney, doing business under the firm name of the National Engineering & Construction Co., and hereafter referred to as the original contractors, entered into a contract with the Board of Education of the city of St. Louis, "to construct, erect and build heating and ventilating plants in the Baden School" in that city. For the performance of that contract the contractors gave a bond to the board of education, the Fidelity & Guaranty Company, appellant here, defendant below, being the surety. The bond and contract were executed March 12, 1907, the bond being given under and in accordance with sections 6761, 6762, Revised Statutes, 1899, that being the law in force at the date of the execution of it and of the contract. Among the other conditions in the bond is the condition that the principals "shall make payment to the parties furnishing the same for all materials used in the work, provided for in the said contract and specifications hereunto annexed, . . . whether by subcontract or otherwise." The contract makes the usual provision allowing the board of education to retain from the moneys due and coming to the contractors enough to pay and satisfy the claims of artisans, laborers and all those employed by or furnishing material to the contractors, not however rendering the board of

education liable for the payment of wages and material in case the contractor failed to make payment. As in the Carey case, the condition covered by this provision is not here present. There is also the usual condition authorizing the commissioner of the board to have the work completed on failure of the contractors and to charge the cost therefor against them, the surety of course then being liable.

Shortly after entering into the contract and giving the bond, it appears that the partnership of Kohlbry & DeLaney was dissolved and went out of business, and a corporation called The Advance Engineering & Construction Co., was formed, originally by Kohlbry and two others and into which company DeLaney afterwards entered. Under date of the 18th of March, 1907, the relator here entered into a contract in writing with this Advance Engineering & Construction Co., to place what is called the "Johnson system of temperature regulation" in the Baden school, the installation of this heat regulating apparatus of relator being one of the three systems it was provided in the contract between the original contractors and the school board should be installed. This contract is signed in the name of the Advance Company by Kohlbry as its president. A few months after entering into this contract with the Advance Company, the Johnson Company commenced the installation of these appliances, completing the installation about the 1st of January, 1908. The work of installation of this plant was done under the inspection of the representative of the board of education and was accepted as in all respects satisfactory. The board of education, however, not recognizing the Johnson Heat Regulating Company in the matter, nor anyone but the original contractors, made payments to the original contractors, Kohlbry & DeLaney, under their firm name of National Engineering & Construction Co., the checks by which the payments were made be-

ing indorsed over in the name of the National Engineering & Construction Co., by Kohlbry to the Advance Engineering & Construction Co., and turned over indorsed by Kohlbry as president of the Advance Engineering & Construction Co., to the Johnson Heat Regulating Company. The contract price for the installation of this temperature regulation system was $1875. The amount paid on account of this contract to the Johnson Heat Regulating Company totalled $967.46, leaving a balance unpaid of $907.54. It was for this amount, with interest and costs that this action was instituted in the name of the board of education at the relation and to the use of the Johnson Heat Regulating Company.

So far it will be seen by reference to the Carey case, the bond and the contract and the doing of the work by others than the original contractors, the facts in this case and those in the Carey case are parallel, save as to names and nature of the work. Here the parallel ends. In the Carey case there was no evidence tending to show any privity of contract between the original contractors and the relator there. In the case before us, there are facts in evidence which it is claimed do make the connection.

It appears that at a meeting of the Advance Engineering & Construction Co., held on the 2nd of May, 1907, the following motion was made and carried: "That all the business of the National Engineering & Construction Company be assumed by the Advance Engineering & Construction Company." It further appears that at that time Kohlbry was a stockholder and president of the Advance Company and that De-Laney had become a stockholder in it about that date, and that they had turned over to the Advance Company their interest in their late partnership for stock in that company. There is also evidence tending to show that at least from the time of the making of the contract between the Advance Engineering & Con-

struction Company and the Johnson Heat Regulating
Company before referred to, and following that con-
tract, Kohlbry & DeLaney, the original contractors,
under their firm name of National Engineering & Con-
struction Company had recognized the Advance Com-
pany as having taken over the performance of at
least that much of the original contract as covered the
installation of the Johnson system in the Baden
school. Checks for payments which were made on
account of the work were made in the name of the
National Company and indorsed in that name by
Kohlbry and turned over to the Advance Company
and by it to relator. It is also in evidence that the
Advance Engineering & Construction Company, short-
ly after the making of the contract between that com-
pany and the Johnson Heat Regulating Company had
made an assignment under the statute, it being insolv-
ent. Mr. Kohlbry testified, in subtance, that he and
DeLaney were in partnership in March, 1907, under
the name of National Engineering & Construction
Company, under which name they had entered into the
contract and given the bond; that the National Engi-
neering & Construction Company, the partnership, was
dissolved and all its business assumed by the Advance
Engineering & Construction Company, a corporation.
He was one of the incorporators and president of the
company but did not remember the exact date of in-
corporation. That company entered into the contract
in evidence and before referred to with the relators,
he (Kohlbry) signing it as president of the company.
Identifying the minute book of the company in which
appeared the resolution before set out, and which was
read in evidence, he was asked this: "What arange-
ment, if any, was made between the National Com-
pany and the Advance Company with reference to the
doing of the heating and ventilating work on the Ba-
den school?" He answered, "Why, the Advance Com-

166 Mo. App.—27

pany finally assumed the contract of the National Company, as shown by the minutes of the Advance Engineering & Construction Company.'' Witness did not remember whether the National Company had done any work under the contract or whether the Advance Company did any at all. All that he and his partner DeLaney had by way of money or property was what they had represented in the stock of the Advance Company.

On cross-examination Mr. Kohlbry was asked this: ''According to the minute that was read just now, an attempt was made in May, 1907, to turn over to the Advance Engineering & Construction Company the business then on hand of Kohlbry & DeLaney, copartners, doing business as the National Engineering & Construction Company?'' He answered, ''Yes.'' The only assets of the partnership were what were subsequently put into the Advance Company. In answer to a question by the court, Kohlbry testified that he and DeLaney had dissolved at the time the Advance Company assumed the partnership business; did not remember that there was any writing outside of the minute read, with reference to the business or mode of business between the National and the Advance Companies.

On this state of facts, the original contract and bond and the contract between the Advance Company and the Johnson Heat Regulating Company being in evidence, the trial court, a jury having been waived, finding the issues for relators, entered up judgment for the penalty of the bond and assessed plaintiff's damage at $950.29, that being the amount of the debt and interest to the date of the finding. Judgment being entered accordingly, defendant, filing a motion for a new trial, has duly perfected its appeal to this court.

Learned counsel for appellant makes six points as grounds for reversal. First, that the question involved in the case is fully considered and determined

by this court in Board of Education ex rel. Carey v. United States Fidelity & Guaranty Co., supra. Second, that the distinction sought to be made by respondent between that case and this is neither supported by the evidence nor good in law, it being claimed that the relator is not a subcontractor under Kohlbry & DeLaney and that it is clear that the surety is bound only for the acts of his principal and cannot be held for the acts of a volunteer undertaking to carry out the contract of the principal nor for the acts of the principal's successor in business if it should undertake to transfer the business. Third, that the evidence in the case establishes beyond cavil that the Johnson Heat Regulating Company is not a subcontractor under Kohlbry & DeLaney and therefore it cannot recover. Fourth, that the instruction given for plaintiff is erroneous because the facts therein hypothetically assumed are not based on the evidence in the case but are disproved by it; that the conclusion drawn in the instruction is based on three different and inconsistent hypotheses and that it is impossible to tell upon which of them the conclusion announced is founded, and that as the declarations of law asked by defendant announce correct principles of law they should have been given. The fifth proposition is subdivided into four: (a) Where a party becomes a surety for costs in the case of A against B he cannot be held as surety after C has been substituted as plaintiff in place of A. (b) Nor is a surety for one after that one takes a partner liable for the joint debt. (c) The contract into which the surety has entered cannot be varied without its consent and if varied the surety is discharged. (d) It cannot be claimed that when appellant became surety for Kohlbry & DeLaney it contemplated that it was also becoming surety for the Advance Engineering & Construction Company, a company not then in existence and in nowise connected with the contract and the board of

education and Kohlbry & DeLaney. The sixth point is that in a mechanic's lien suit the contractor is a necessary party defendant against whom the debt must be established; that the bond required by the statute "is a substitute for the lienable real estate of the private owner," and that if the analogy between actions on these bonds and the mechanic's lien law is to be preserved, then the debtor in the suit on the bond is a necessary party, and the debtor not having been made a defendant in this case, the debt could not be established.

Considering the first three points together, we are of the opinion that the crucial fact which was absent in the Carey case and upon the absence of which the decision in that case turned is present in the case at bar. That the Johnson Heat Regulating Company was, in law and in fact, a subcontractor under the Advance Engineering & Construction Company is clear beyond all doubt. The relator was not a volunteer as to that company; it undertook the work by express written contract with the Advance Company.

Was the Advance Company a subcontractor under Kohlbry & DeLaney, the original contractors? We have concluded that there is evidence tending to support the finding of the trial court, that in fact and in law the Advance Company was a subcontractor under the original contract. It took over the work under and by contract with Kohlbry & DeLaney. It is true that no formal subletting appears, but all of its acts and of the board of education support the idea of a subletting and not an assignment of the contract. The board of education recognized no assignment of the contract, as it was necessary for it to do in writing by the terms of the contract, but made all the payments direct to the National Engineering & Construction Company. It is true that the resolution of the Advance Company by which that company took over the business of Kohlbry & DeLaney, was adopted by

the directors of the Advance Company after the execution of the contract between the Advance Company and the Johnson Heat Regulating Company. If not the original agreement, it surely was a ratification of an existing agreement. So that it is clear that the Advance Company did take over at least this part of the contract. All parties, that is Kohlbry & DeLaney, the Advance Company, the Johnson Company, and the board of education recognize that as a fact. Under what form it did so is not material. We may grant that no formal subletting had been made, still there is testimony tending to show that in point of fact the whole contract was sublet by the original contractor to the Advance Comapny and that the contract for the installation of the heat regulating plant had been sublet by the Advance Company to the relator. No one undertook to make a new contract between the board of education and the Advance Company, or the board of education and relator. All parties acted under the original contract. The acts of the parties establish this as we think beyond controversy. So, to repeat, as between the relator and the Advance Company, the contractual relation is established beyond controversy; as between the Advance Company and the original contractor, there was evidence warranting the trial court in finding that there was privity of contract between Kohlbry & DeLaney, the original contractors, and the Advance Company. Treating the resolution of the Advance Company as intended to place that of record which before existed in parol, or as ratification of what had previously occurred, in either case its legal effect is an acceptance of the obligation of the contract of the original contractors by the Advance Company, evidently done, not as a mere volunteer, but for value, namely, stock in the Advance Company, and on procurement of the original contractors. It was acquiesced in by them, acted on by all parties, and in legal effect is a subletting of the

contract by Kohlbry & DeLaney to the Advance Company, which latter company, in unmistakable terms subsequently sublet this heat regulating part of the contract to the relator.

It is beyond question that the surety of a contractor is only liable to those who have done work or furnished material, by contract, under the original contract; that the liability of the surety extends only to those in privity by contract with the original contractor. While the privity of contract is necessary it need not be directly with the original contract but it must spring out of it. That it is not derived directly from the original contractor does not destroy the privity. It may come through contract with the subcontractor, as, in mechanic's lien cases it frequently does. The contract and the bond require the principal and surety to respond for claims for labor and material furnished under the contract, and whether that claim for labor and material comes directly from the original contractor or from a subcontractor, or from a laborer or materialman under the subcontractor, is immaterial, so long as its origin is called for in the original contract and grows out of the original contract. Those are in privity of contract with the original contractor who do labor and furnish material for the subcontractor under the original contract, provided that labor and material fall within the original contract. As was said by Judge BLAND, speaking for our court in Hydraulic Press Brick Co. v. School District et al., 79 Mo. App. 665, and referring to a bond claimed to have been given under this same provision of the statute, "the evident purpose of the act is to give a right of action on the bond of the contractor to every person who would have a right to file or enforce a mechanic's lien on the building contracted for, only for the fact that buildings of the corporations named in the act are exempt from operation of the mechanic's lien law." We

think it is beyond question in the case at bar that if
the school building in which this plant was installed
had been subject to the operation and provisions of
the mechanic's lien law, there would be no doubt but
that the claim of these relators is a claim of such char-
acter as is capable of enforcement under that law.
Following that law, and by analogy, we think it clear
that the claim of the relator is within the letter and
the spirit of the bond which was given by the contrac-
tors and on which the defendant is surety. Learned
counsel for appellant quotes this sentence from page
117 of the Carey case, supra: "It is entirely clear
that the defendant surety company obligated itself to
answer only for the obligation of the copartnership of
Kohlbry & DeLaney, the contractors." But follow-
ing this quotation of part of a sentence from the Carey
case is this very significant observation by Judge
NORTONI, who wrote the opinion: "How or under
what inducement the Advance Engineering & Con-
struction Company came to perform the work, which
was contracted for by Kohlbry & DeLaney, and en-
gaged relator to aid it in so doing, we are not advised,
and the argument advanced concedes that the proof
does not show such inducement." That was the fatal
defect in the Carey case. Here in the case at bar there
was substantial evidence justifying the finding of the
trial court that that connection had been made. This,
as we think, disposes of the three first points made by
the learned counsel for appellant.

The fourth point going to what is claimed to be
error in the declarations of law given, is to be con-
sidered under the proposition that where the trial is
before the court, declarations of law are only of serv-
ice in indicating the theory upon which the court
tried the case. We cannot agree with the contention
of the learned counsel for appellant, that the facts in
that instruction hypothetically assumed are not based
on the evidence in the case and we do not agree that

the evidence disproved them. Nor are we of the opinion that the conclusion drawn in the declaration is based upon three different and inconsistent hypotheses and that it is impossible to tell upon which of them the conclusion announced is founded. That declaration, in substance, sets out that if the court sitting as a jury believes and finds from the evidence that on or about the 12th of March, 1907, the board of education entered into a contract with Kohlbry & DeLaney, copartners, to construct and build the heating and ventilating in the school house, a public school building, and that it was provided in that contract that the contractors, at their own cost and expense, should furnish all the material used in the construction of the work and that about that date Kohlbry & DeLaney, as principals, and the United States Fidelity & Guaranty Company as surety, executed a bond to the Board of Education which was accepted by that board and that the bond provided that if the National Engineering & Construction Company faithfully and properly performed the contract according to the terms thereof and made payment to all the parties furnishing the material used in the work provided for in the contract and for all the labor performed on the work, whether by subcontract or otherwise, "and that the said National Engineering & Construction. Company had some arrangement, agreement or understanding with the Advance Engineering & Construction Company for the doing of such work or that the said Advance Engineering & Construction Company undertook to do such work and that the plaintiff (relator) herein did, at the request of the Advance Engineering & Construction Company, if it so find there was a request, performed the work and furnished the material referred to in the evidence to said Baden school . . . and that plaintiff (relator) has not been paid therefor, then its finding will be for plaintiff (relator) for the sum as the court may believe and find from the evi-

dence remains unpaid.'' It is true that this declaration is not very carefully or accurately drawn but we think that it indicates beyond all question that the learned trial judge held that it was essential to recovery by the relator that the court should find from the evidence in the case that relator was not a mere volunteer in doing the work but that it did it under a contract or arrangement or at the request of and for the original contractor or one in privity with that contractor. If it did, then there was such privity of contract between it and the original contractor as in our judgment made the surety liable for the payment of the value of the work done and material furnished. That was the essential point in the case. Hence we do not think that this assignment as to the instruction is well taken. The result reached is right on the facts.

We may concede that the propositions of law made by the learned counsel in his fifth point are correct propositions of law; the trouble, however, is, that they do not meet the case at bar. It is immaterial that at the time of entering upon the bond as surety, the surety may not have contemplated that it was to become liable for the Advance Engineering & Construction Company, if that Advance Engineering & Construction Company was not by contract in privity with the original contract, but if privity of contract existed or fell in at any time during the performance of the work originally contracted for, it is entirely immaterial as far as the surety is concerned, whether, at the time it entered upon its obligation of surety, it knew who the subcontractors were to be. It rarely occurs that at the time of entering into the contract and execution of the bond, the original contractor or the surety do know or can know who the various subcontractors, laborers and materialmen are thereafter to be, yet undoubtedly all contemplate that the bond is to stand good for those who come into the work,

either directly or indirectly, with the principal in the bond, that the surety is liable.

The remaining point of the learned counsel, that the contractor is a necessary party defendant against whom the debt must be established, is not applicable in the case at bar, for in this respect the analogy between proceedings under the mechanic's lien law and proceedings under a bond fails. The cause of action here is the breach of the condition of the bond. It is established by many cases that in a suit on the bond it is not essential that the principal should be made a party to that suit, particularly when it is true, as alleged and in evidence in this case, that that principal is insolvent.

To sum up: Granted that in the construction of the obligations of its contract, the surety is entitled to the benefit of the application of the ancient rule *strictissimi juris,* we find no violation of that rule in holding this surety responsible on this bond for payment of the claim of the relator. The contract between the board of education and the original contractor called for the furnishing of the heat ventilating appliance of one of three several systems named. The relator was owner of one of those systems, hence the selection of that system by the original contractor was strictly in accordance with the terms of the contract. If the original contractor had not provided this particular plant, or one of the others named, it was within the terms of the bond and of the contract, that the board of education would have one or the other installed and in that case could have held the original contractor and the surety, defendant here, on the bond for whatever amount, within the penalty of the bond, it would have cost to put in that plant, so that defendant in no manner whatever is harmed or injured by compelling it now to respond to the demand of relator for the unpaid balance due it for installing its regulating appliance.

Relator installed this plant by direct written contract with the Advance Engineering & Construction Company. The whole tendency of the testimony irresistably leads to the conclusion that the Advance Engineering Company had taken over the contract to do this work from the original contractors. Whether we call the Advance Engineering Company subcontractor or successor is not material, for by privity of contract, express or implied, between that company and the original contractor, the Advance Company took over the installation of the heating and ventilating appliance in the Baden school, and did install it according to the original contract. When it did that it was within the contract and the protection of the bond. The language of the bond is that the principals shall make payment to the parties furnishing material used in or doing labor for the work provided for in the contract "whether by subcontract or otherwise." It is immaterial whether the material was furnished and the work done was by subcontract—technically—or by agreement. The essential thing is that it was done under and within the terms of the original contract and not done by a mere volunteer.

Our conclusion on the whole case is that the judgment of the circuit court is for the right party and should be and is affirmed. *Nortoni* and *Caulfield, JJ.,* concur.