# OCTOBER, 1937.

The City of St. Louis to the use of The Stone Creek Brick Company, a Corporation (Plaintiff), Appellant, v. Kaplan-McGowan Company, a Corporation, and United States Fidelity and Guaranty Company, A Corporation (Defendants), Respondents.—108 S. W. (2d) 987.

St. Louis Court of Appeals. Opinion filed October 5, 1937.

*Edwin C. Luedde* for appellant.

*Carter & Jones* and *James E. Garstang* for respondent, United States Fidelity and Guaranty Company.

BENNICK, C.—This is an action brought by or to the use of plaintiff, The Stone Creek Brick Company, an alleged materialman, upon a certain public works bond which was furnished by defend-

ant Kaplan-McGowan Company as general contractor, with defendant United States Fidelity and Guaranty Company as surety, conditioned upon the performance by said Kaplan-McGowan Company as general contractor of the terms of a contract entered into between it and the City of St. Louis for the construction of the Service Building of the Homer G. Phillips Memorial Hospital for Colored.

A jury was waived and the cause tried before the court alone, resulting in a finding in favor of defendants. Judgment was rendered accordingly, and plaintiff's appeal to this court has followed in the usual course.

The controlling facts of the case are simple and undisputed.

Under the terms of the contract in question it was provided that in making payment for the work done the city might retain certain percentages from the sums due the general contractor from time to time, the evident purpose of such provision being to protect laborers and materialmen and those having claims of a lienable nature, and also to protect the surety on the bond. Indeed the bond was conditioned upon the fact that Kaplan-McGowan Company, the general contractor, should faithfully and properly perform the contract according to its terms, and, upon the completion of the work, pay the proper parties all amounts due for material and labor used and employed in the performance of the same, to which end it was provided that the bond might be sued on at the instance and to the use of any materialman, laboring man, or mechanic for any breach of the conditions thereof.

In the course of the construction of the building Kaplan-McGowan Company, the general contractor, sublet the brick work to Parker and Sloss as subcontractors. Parker and Sloss purchased the brick used on the job from one Stocke, doing business as Progress Press Brick and Machine Company, and later as Progress Press Brick and Sales Company. However Stocke did not himself manufacture the bricks so sold by him to the subcontractors, but purchased the same instead from plaintiff, The Stone Creek Brick Company, an Ohio corporation having its plant or place of business at Stone Creek in that state.

While it is true that Stocke, before entering into a contract with plaintiff for the purchase of the brick, submitted samples of the brick to the city engineer and secured his official approval of the same, the important thing is that neither the city, the general contractor, nor the subcontractors knew of the source from which Stocke intended to and did afterwards obtain the brick, or that the same was not being manufactured by Stocke himself.

After the city engineer's approval of the brick had been secured Stocke contracted with plaintiff for the purchase and delivery of

such brick as he might thereafter desire from time to time. There seems to be no doubt that in the course of the negotiations Stocke informed plaintiff that the brick was to be used in the construction of a hospital by the city, but there was some disagreement as to whether plaintiff was advised that a bond would be given by the general contractor. However there is no claim made that plaintiff at any time had any direct dealings with either the city, the general contractor, or the subcontractors, and indeed it appears that it was with the question of Stocke's personal credit that plaintiff was primarily concerned, its own evidence having disclosed that the contract was not entered into until after it had investigated Stocke's credit and had discussed the matter with him.

Thereafter as shipments of brick would be ordered by Stocke from plaintiff the same would be loaded and consigned directly to him at his plant or place of business in the City of St. Louis, and, upon arrival at their destination, would be unloaded by Stocke and then be delivered by him in trucks to the subcontractors on the job. All of the bricks when shipped were of course fully manufactured and ready for use in the building under construction, though none of the invoices or bills of lading accompanying the shipments bore any designation that the bricks were to be used on any particular job. To the contrary, the account for the purchase price was carried purely between plaintiff and Stocke, and the necessary credit was extended to Stocke by plaintiff as the respective purchases were made.

Upon the completion of the work the subcontractors were paid in full by the general contractor, and Stocke in turn was paid in full by the subcontractors. However, as between plaintiff and Stocke there was a balance of $1,165.02 remaining due on account at the conclusion of all shipments, and upon plaintiff's inability to obtain payment of the same from Stocke, it brought this action on the bond upon the theory that its failure to have received payment for the bricks going into the building constituted a breach of the condition of bond so as to entitle it as a materialman to maintain this action upon it. Defendants, the general contractor and the surety, contend that for want of privity of contract plaintiff has no right of action on the bond, and upon the issue thus joined the finding and judgment of the lower court has been for defendants as has already been indicated.

Now the bond was concededly executed conformably with the requirements of Section 2890, Revised Statutes 1929 (Mo. St. Ann., sec. 2890, p. 744), which makes it the duty of all officials of any city, in making contracts for public work of any kind to be performed for such city, to require every contractor for such work to execute a bond to the city, conditioned upon the payment for all labor performed and

material used or consumed in the construction of the work, whether by subcontractor or otherwise.

Then follows Section 2891, Revised Statutes, Missouri, 1929 (Mo. St. Ann., sec. 2891, p. 748), which provides that every person furnishing material or performing labor, either as an individual or as a subcontractor for any contractor with such city or other political subdivision, where bond shall be executed as provided in Section 2890, shall have the right to sue on such bond in the name of such city or political subdivision, but for his own use and benefit. It has been held that Section 2891, regardless of any apparent contrariety in its language, is to be construed along with Section 2890 as giving a right of action to all persons for whose benefit and protection a bond is required by Section 2890, it being inconceivable that it could have been the intent of the Legislature to restrict the right of recovery on such a bond to a more limited class of persons than those covered by the preceding section which requires a bond to be given. [Jackson County ex rel. v. Construction Co., 174 Mo. App. 28, 33, 160 S. W. 274.]

Moreover it is of importance to note that the purpose of requiring a bond to be executed in connection with a contract for the erection of a public building is to afford those persons furnishing labor and material on public work, which cannot be subjected to a mechanic's lien, the same measure of protection as is afforded by the mechanic's lien law in those cases where the building or improvement is not of a public character. [Camdenton Consol. Sch. Dist. No. 6 v. New York Cas. Co. (Mo.), 104 S. W. (2d) 319; St. Louis to use of Supply Co. v. Construction Co., 175 Mo. App. 555, 158 S. W. 98.]

It is of course true that a statutory public works bond may, in certain respects, give a wider range or protection than that which is to be had under the mechanic's lien law, but as we understand the situation the difference between the two remedies extends not to the classes of persons who may be benefited, but rather to the items of material for which payment is secured. In other words, the statute requiring the giving of a public works bond enumerates certain specific items of material which, if used or consumed in the progress of the work, are made to fall within the purview of the bond, but which could in no event be held to be lienable under the mechanic's lien law if the improvement were one of private enterprise. It follows, therefore, that to the extent the statute makes it so a public works bond does afford a wider range of protection than could be had under the mechanic's lien law, but in other respects it would appear that the ultimate measure of relief is identical as regards the claims of those persons who have furnished labor and material for the work. [Hilton v. Universal Construction Co., 202 Mo. App. 672, 679, 216 S. W. 1034.]

It is argued in the instant case that when the bond in question is interpreted in the light of the statute with a view to effectuating the

legislative intent expressed therein, plaintiff should be held entitled to recover on the bond upon its mere showing of the undisputed fact that its bricks went into the construction of the building. It points out the broad requirement of the statute that the bond shall be conditioned for the payment of the material used or consumed in the construction of the work and for all labor performed in such work, whether by subcontractor or otherwise, and it insists that the clear import of such language is to disclose that one need not be a subcontractor or a vendor of a subcontractor in order to obtain the protection of the bond.

We see no escape from the conclusion that plaintiff's contention must fail in the light of both reason and precedent.

Though the bond is indeed required to be conditioned so as to secure payment for all labor and material furnished, whether by subcontractor "or otherwise," plaintiff nevertheless has no support for its viewpoint from the use in the statute of the phrase "or otherwise." Bearing in mind the fact that a statutory bond is designed to afford relief in cases of public improvement where the mechanic's lien law cannot apply, this court has already determined that the phrase "or otherwise" as used in the Statute refers only to those persons who might be denominated laborers or materialmen under the mechanic's lien law, and requires the surety to vouchsafe the payment for labor and material, whether furnished by the subcontractor himself, or by an outside party who furnishes such labor or material to him. [Board of Education ex rel. v. Fidelity and Guaranty Co., 155 Mo. App. 109, 120, 134 S. W. 18.] In other words, the phrase "or otherwise," though at first blush apparently calculated to be all inclusive as to those who furnish labor or material for the work, is actually not so, but under the decision cited comprehends only those laborers or materialmen who furnish labor or material to a subcontractor.

As a matter of fact, the actual test to be applied in determining the right of a party such as plaintiff in this case to have recourse to the contractor's bond for the payment of his account is one of privity of contract between him and such contractor.

In respect to this question this court has said Board of Education v. Fidelity & Guaranty Co., 166 Mo. App. 410, 422, 149 S. W. 46:

"It is beyond question that the surety of a contractor is only liable to those who have done work or furnished material, by contract, under the original contract; that the liability of the surety extends only to those in privity by contract with the original contractor. While the privity of contract is necessary, it need not be directly with the original contract, but it must spring out of it. That it is not derived directly from the original contractor does not destroy

the privity. It may come through contract with the subcontractor, as, in mechanic's lien cases, it frequently does. The contract and the bond require the principal and surety to respond for claims for labor and material furnished under the contract, and whether that claim for labor and material comes directly from the original contractor or from a subcontractor, or from a laborer or materialman under the subcontractor, is immaterial, so long as its origin is called for in the original contract and grows out of the original contract. Those are in privity of contract with the original contractor who do labor and furnish material for the subcontractor under the original contract, provided that labor and material fall within the original contract.''

Though we have numerous decisions in this State which deal in one way or another with the question of the lengths to which the security of a statutory public works bond may lawfully be held to go, we know of no case which purports to extend the coverage of such a bond to any class of persons beyond those who furnish labor and material to a building or improvement for a subcontractor in the course of the carrying out of the terms of the original contract made with the principal contractor.

When the principal contractor and his surety execute their bond they know that certain portions of the work either will or may be let out to subcontractors, and, if so, that it will or may be necessary for certain materialmen and laborers to furnish material and perform labor in the prosecution of those portions of the work thus sublet. Consequently it follows that one who furnishes material on the job or performs labor on the job for a subcontractor is in privity of contract and within the protection of the bond, in that he furnishes his material or performs his labor at the instance of the subcontractor, who is of course in direct privity with the principal contractor. [St. Louis to use of Supply Co. v. Construction Co., 175 Mo. App. 555, 563, 158 S. W. 98; Board of Education v. Fidelity & Guaranty Co., 166 Mo. App. 410, 425, 149 S. W. 46; State ex rel. v. Carterville Construction Co., 220 Mo. App. 244, 284 S. W. 150; Jackson County ex rel. v. Construction Co., 174 Mo. App. 28, 160 S. W. 274.]

But it is at this point that privity of contract ends, and one who supplies material to a materialman, who in turn supplies the subcontractor, is to be relegated to the *status* of a stranger to the original contract, since such person's contract or undertaking is neither with the principal contractor, nor with one who, as in the case of a subcontractor, deals directly with the principal contractor. Such person's contract is therefore but indirect and collateral to the original contract, and for want of privity does not serve to bring such party within the purview of the principal contractor's bond.

So in the case at bar we are forced to the conclusion that plaintiff has no right of action on the bond in order to secure payment of its account with Stocke, and this notwithstanding the fact that the bricks it sold Stocke eventually found their way into the building. It will be recalled that plaintiff was a stranger to both the principal contractor and the subcontractor. Its dealings were all with Stocke, who himself had no dealings with the principal contractor, but was in privity of contract only for the reason that he dealt with the subcontractors, who were in direct privity with the principal contractor. Moreover it is of further importance to note that plaintiff did not deliver its bricks on the job, but instead delivered them to Stocke, by whom they might have been used in any manner or for any purpose he desired. We suppose that plaintiff should undoubtedly receive payment of its account, but its account was wholly with Stocke, and its undertaking is one entirely too remote from the original contract between the city and defendant Kaplan-McGowan Company, the principal contractor, to entitle it to claim the *status* of a proper party for the security of whose account the bond was given. [Berger Manufacturing Co. v. Lloyd, 209 Mo. 681, 108 S. W. 52.]

Other alleged errors having to do with the admission of evidence and the like are obviously of no consequence if plaintiff has no cause of action to assert against defendants.

It follows that the judgment rendered by the circuit court should be affirmed, and the Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court.

The judgment of the circuit court is, accordingly, affirmed. *Hostetter, P. J.,* and *Becker* and *McCullen, JJ.,* concur.