SWEETSER CONSTRUCTION CO. *v.* NEWMAN BROTHERS, INC.

5-3046                                                                  371 S. W. 2d 515

Opinion delivered September 30, 1963.

[Rehearing denied November 4, 1963.]

*Franklin Wilder* and *E. J. Ball,* for appellant.

*Greenhaw & Greenhaw, Pearson & Pearson,* for appellee.

PAUL WARD, Associate Justice. In May 1960 the University of Arkansas entered into a written contract with B. Sweetser Construction Company (hereafter referred to as prime contractor) for the erection of a men's residence hall at Fayetteville, the total contract price being $1,426,363. The United States Fidelity and Guaranty Company (hereafter referred to as surety) executed a bond, pursuant to Ark. Stat. Ann. §§ 51-632 and 51-635 (Supp. 1961), conditioned that the prime contractor "shall faithfully perform his contract, and shall pay all indebtedness for labor and materials furnished or performed . . . in the erection" of the said building.

The building was to be constructed according to plans and specifications prepared by a named firm of architects. Among other things the plans and specifications called for a certain aluminum fabrication to be used in the installation of a certain stairway. This fabrication (hereafter called Item 7) was designated "Econo Rails and Posts", manufactured by Newman Brothers, Inc. located in Ohio — hereafter called appellee. The plans and specifications called for Item 7 or *its equal.*

Item 7 was in fact fabricated by appellee and used in the construction of the building, the price of the item being $1,200. The issue to be decided by this litigation is whether appellee is entitled to recover the above amount from appellants or either of them. The real issue which we will consider is, as defined by the trial court, whether the surety is obligated under the above statutes to pay appellee.

In order to understand and discuss the issue it is necessary to set out below certain material facts which are not in dispute.

On May 20, 1960 the prime contractor entered into a written contract with the Fort Smith Structural Steel Company wherein the latter agreed to furnish $102,000 worth of structural steel and other metals (consisting of

27 items) to be used in the building. Included therein was Item 7. About a week later the prime contractor issued a purchase order for the above items. Thereupon the Fort Smith Company placed an order for Item 7 with the United Iron and Steel Company of Oklahoma City. Then the latter company placed an order for Item 7 with appellee. On January 13, 1961 appellee shipped Item 7 to "Men's Residence Hall, University of Ark., Fayetteville, Ark." The invoice (apparently) was sent to "United Iron and Steel Co., P. O. Box 3885, Oklahoma City 6, Okla." The above quotations were taken from the invoice issued by appellee as shown in the record. Sometime in August, 1961 the prime contractor paid the Fort Smith Company $1,200 for Item 7 along with full payment for all other contract items. The Fort Smith Company paid the Oklahoma Company for Item 7, but the latter company has not paid appellee.

Appellee's complaint, asking for $1,200 from appellants, and appellant's general denial were presented to the trial court upon interrogatories and stipulations. Both sides moved for a summary judgment. The trial court sustained appellee's motion and appellees would sustain the court on the grounds that the statutes previously mentioned impose an absolute obligation on the surety to pay for Item 7 and that the law requires no privity between appellee and the prime contractor—especially since the contract called for a named item—Item 7.

We are unable to agree with the contentions of appellee under the facts in this case. Section 51-632 mentioned previously merely provides that the prime contractor in this instance had to furnish a bond in an amount equal to the contract price—$1,426,363. Section 51-635, previously mentioned, reads:

"(a) The bond required or authorized in this act [§§ 51-632—51-638] shall be executed by a solvent corporate surety company authorized to do business in the State of Arkansas, and shall be conditioned that the contractor shall faithfully *perform his contract, and shall pay all*

*indebtedness for labor and materials furnished or performed in the repair, alteration or erection.*

"(b) The bond required or authorized in the foregoing sections of this Act shall in itself be a full compliance with all other statutes of this State now or hereafter in effect relating to bond requirements on contracts for the repair, alteration or erection of any building structure or improvement, public or private, it being the intention of this Act to provide a uniform bonding procedure in conjunction with such contracts." (Emphasis added.)

We are wholly unable to hold that the above statute in this instance imposes an absolute duty on the surety to pay appellee since there is no showing of any privity between appellee and the prime contractor. If the surety is liable to appellee then it would seem to follow logically that the surety would also be liable to any person who might have furnished labor or material for the fabrication of Item 7 but had not been paid by appellee, and *ad infinitum.* Under such a construction of the statute it would be difficult for any surety company to determine the extent of its liability or when it would end.

We are impressed with the reasoning used and the conclusions reached in the case of *City of St. Louis, to Use of Stone Creek Brick Co.,* v. *Kaplan-McGowan Co., et al.,* 233 Mo. App. 789, 108 S. W. 2d 987. In that case appellee was hired as the prime contractor to build a hospital for the City of St. Louis. A surety company executed its bond pursuant to statute. In the course of construction appellee sublet the brick work to Parker and Sloss; the latter purchased the brick from one Stocke; and, Stocke purchased the brick from appellant—Stone Creek Brick Co. The subcontractor was paid in full but the Stone Creek Brick Co. was not paid. The court held the surety was not liable to Stone Creek Brick Co. on the ground that it was not in privy with the prime contractor. In that case the statute was more liberal for the supplier of materials than the statute involved in this case. Mo. Stat. § 2890 (1929) [Mo. Stat. § 3277 (1939)] requires the surety to pay for all materials furnished "in such work whether by subcontractor or other-

wise". In holding as it did, the Missouri Court of Appeals used language which we think is applicable and controlling in the case under consideration.

"As a matter of fact, the actual test to be applied in determining the right of a party such as plaintiff in this case to have recourse to the contractor's bond for the payment of his account is one of privity of contract between him and such contractor."

Quoting from *Board of Education of St. Louis* v. *Fidelity & Guaranty Co.,* 166 Mo. App. 410, 422, 149 S. W. 46, 49, the court further said:

" 'While the privity of contract is necessary it need not be directly with the original contract but it must spring out of it. That it is not derived directly from the original contractor does not destroy the privity. It may come through contract with the subcontractor, as, in mechanic's lien cases it frequently does. The contract and bond require the principal and surety to respond for claims for labor and material furnished under the contract, and whether that claim for labor and material comes directly from the original contractor or from a subcontractor, or from a laborer or materialman under the subcontractor, is immaterial, so long as its origin is called for in the original contract and grows out of the original contract.' "

The court then said:

"But it is at this point that privity of contract ends, and one who supplies material to a materialman, who in turn supplies the subcontractor, is to be relegated to the status of a stranger to the original contract, since such person's contract or undertaking is neither with the principal contractor, nor with one who, as in the case of a subcontractor, deals directly with the principal contractor. Such person's contract is therefore but indirect and collateral to the original contract, and for want of privity does not serve to bring such party within the purview of the principal contractor's bond."

In this opinion we do not mean to hold that a person who furnishes material to a subcontractor is not in

privy with the prime contractor, but just the contrary. In this connection the general rule is stated in 77 A.L.R. at page 148 as follows:

"It is generally held that persons supplying materials and labor to a subcontractor, rather than directly to the general contractor, may recover on a bond given pursuant to such a statute."

The statute referred to above was one, similar to our own statute, required by contractors in constructing public buildings.

In the case under consideration it is clear from the above statements that appellee was not in privy with the prime contractor. It is contended by appellee that the Fort Smith Company was a subcontractor. Conceding, without deciding, this to be true, it avails appellee nothing because appellee did not deal with that company but with the Oklahoma Company which has been paid in full.

Appellee cites the case, *Stewart-McGehee Construction Co.* v. *Brewster and Riley Feed Manufacturing Company,* 171 Ark. 197, 284 S. W. 53, in support of its contention that there need be no privity between the furnisher and the prime contractor. In that case, however, the claimant furnished the material to a subcontractor. Therefore the Court was correct, as previously pointed out, in holding the surety liable. Neither does the case of *Detroit Fidelity & Surety Company* v. *Yaffe Iron & Metal Co., Inc.,* 184 Ark. 1095, 44 S. W. 2d 1085, support appellee. There, the only issue to be decided by the Court was whether certain two and one-half inch water pipe furnished by claimant to the prime contractor should be classified as major equipment of the contractor or materials used in the construction. In holding in favor of the supplier of the pipe, the Court said the bond and the statute "must be construed liberally in order to effectuate the purpose of the Legislature . . ."

We find no merit in appellee's contention to the effect that the peculiar nature of Item 7 was sufficient to put the prime contractor on notice that appellee fur-

nished the same, and should therefore, in the interest of justice, be paid. It is pointed out the specifications did not call for an item to be made by appellee—it called for such item *or its equal.*

In view of what we have heretofore said, the judgment of the trial court is reversed and the cause of action is dismissed.

Reversed and dismissed.