## Commonwealth v. United States Fidelity & Guaranty Co.

*Roger Mattes*, for plaintiff.

*Eugene Nogi* and *Paul A. Barrett*, for defendant.

HOBAN, P. J., February 3, 1964. This is an action of assumpsit brought against a prime contractor and its surety by William Land, Inc., a certificated common carrier by motor vehicle for transportation charges for conveying steel to the plant of a fabricator. The steel was for use in erection of certain bridges on Legislative Route 1005, "The Anthracite Highway," in Lackawanna County, under a contract entered into between the Commonwealth and the Nello L. Teer Company for the construction of a section of that highway.

The facts are clear. The Commonwealth entered into a contract with Nello L. Teer Company (Teer) which duly furnished a performance bond with the United States Fidelity and Guaranty Company, a surety. Teer in turn subcontracted bridge construction work to J. Richard Nissley, Inc., (Nissley). Nissley in turn sub-

contracted the fabrication and erection of certain steel for the bridges to Goodwin-McDowell Steel Corporation who in turn ordered the steel from Bethlehem Steel Company at Bethlehem, Pennsylvania. The steel being manufactured at Bethlehem, was then shipped by rail to the Erie-Lackawanna Station in Scranton. On notification of arrival, Goodwin-McDowell ordered Land to transport the steel from the unloading platform to the Goodwin-McDowell plant in Dunmore. Land did so and has not been paid for its services. The amount of the transportation bill due Land is not disputed.

In the course of these transactions, Bethlehem Steel Company notified Nissley that it would not ship to Goodwin-McDowell unless Nissley guaranteed payment to Bethlehem. Nissley did so, actually paid for the steel, and on arrival of the steel at Dunmore, ordered that all the steel involved in the shipment should be marked "Property of J. Richard Nissley, Inc." While the steel was at Goodwin-McDowell and the minor portion of the fabrication work done, Goodwin-McDowell went into bankruptcy. Nissley filed reclamation proceedings in the U. S. District Court, subsequently obtaining possession of the steel, delivered it to another fabricator who completed the work, and subsequently erected the steel at the job site in Lackawanna County.

From the foregoing it is a clear conclusion of fact that all the steel for the transportation of which Land makes claim actually went into construction of the roadway and bridges under the Teer contract.

The question involved is whether or not Land is entitled to the protection of the surety bond issued by U. S. Fidelity and Guaranty Co. to Teer. The bond is in the statutory form prescribed for public contracts of this nature and contains the following language:

"Now, therefore, the condition of this obligation is such that if the above bounden principal shall and will

promptly pay or cause to be paid in full all sums of money which may be due any person, copartnership, association, or corporation for all material furnished and labor supplied or performed in the prosecution of the work, whether or not the said material or labor enter into and become component parts of the work or improvement contemplated and for rental of equipment used and services rendered by public utilities in, or in connection with the prosecution of such work, then this obligation to be void, otherwise to remain in full force and effect.

"The principal and surety hereby jointly and severally agree with the obligee herein that every person, copartnership, association or corporation who, whether as subcontractor or otherwise, has furnished material or supplied or performed labor or rental equipment in the prosecution of the work as above provided and any public utility who has rendered services in, or in connection with, the prosecution of such work, and who has not been paid in full therefor, may sue in assumpsit on this Additional Bond in the name of the Commonwealth for his, their, or its use, prosecute the same to final judgment for such sum or sums as may be justly due him, them, or it, and have execution thereon. Provided, however, that the Commonwealth shall not be liable for the payment of any costs or expenses of such suit."

Defendants resist payment on the theory that Land's association with the enterprise is too remote to qualify it as a corporation furnishing labor, supplies or performance in prosecution of work and furthermore that Land is not a public utility within the meaning of the language of the bond.

I think clearly that since the bond is written to protect the prosecution of a public contract entered into under Pennsylvania law, the words "Public Utilities" must be interpreted in the light of the Pennsyl-

vania Public Utility Code of May 28, 1937, P. L. 1053, 66 PS §1102, et seq. The definition section of the code in subparagraph 17 reads as follows:

" 'Public Utility' means persons or corporations now or hereafter owning or operating in this Commonwealth equipment, or facilities for: . . .

(c) Transporting passengers or property as a common carrier;"

The words "Common Carrier" are defined in subparagraphs five and six of section II of the code; subparagraph five containing the broad general definition and subparagraph six specifically defining common carrier by motor vehicle with the limitations incident to that particular type of transportation. Land, Inc., is nevertheless a common carrier.

But whether Land can rely on its service as a common carrier or relies on the language in the bond, that it is a corporation furnishing labor performed in the prosecution of the work, I am of the opinion that because of the peculiar nature of this operation that his service was necessary, foreseeable, and an integral part of the operation of getting the product into the public highway under construction. Steel, manufactured specifically for a particular type of operation, is not a commodity like cement, bricks, bolts, nuts, or any other type of readily obtainable material which might be supplied by a remote supplier to a middle man who in turn sells to a fabricator or a subcontractor. Furthermore, it is clearly apparent that this particular steel was earmarked from the start for this job; hence Nissley's insistence that it be marked as Nissley property at the arrival at the Goodwin-McDowell plant. The steel then became Nissley property and obviously it did not get from Bethlehem into Nissley's hands in the Dunmore plant by itself.

The defendants point to a decision in the case of City of St. Louis v. Kaplan-McGowan Co., 233 Mo. App.

789, 108 S. W. 2d 987 (1937). This case involved the sale of bricks by a supplier who sold bricks to a middle man who in turn sold the bricks to a subcontractor who used them in the erection of a public building in St. Louis. The original supplier sought to be compensated under the bond but the Missouri courts held that the bond in that instance extended no protection to the distant original supplier basically, as I read the case, on the theory that there was no privity of contract between the original supplier and any subcontractor or contractor on the job and that the words "or otherwise," as used in the bond in the Kaplan case, did not extend to the services of one not in privity of contract with the prime contractor through its various subcontractors. The Kaplan case is carefully reasoned but I think its premise cannot apply here. In view of the peculiar nature of this contract and particularly of the direct assumption of the control over the steel by Nissley, a subcontractor, as soon as it arrived in the Dunmore plant of Goodwin-McDowell, it seems to me to be as much of Nissley's cost if it was to take the steel to assume the cost of getting it to where Nissley obtained it as it was for Nissley to assume payment of the steel to Bethlehem.

I am therefore convinced that Land's services were clearly within the meaning of the words of the bond, "the protection of the work" and hence is entitled to the protection of the bond.

### Judgment Nisi

Now, February 3, 1964, I find in favor of the plaintiff, the Commonwealth of Pennsylvania, to the use of William Land, Inc., and against defendant, U. S. Fidelity & Guaranty Company, and Nello L. Teer Company in the sum of $1,548.78, interest to be calculated from September 28, 1962.