CITY OF UNIVERSITY CITY ex rel. and to the Use of Edwin D. MACKEY, et al., Plaintiffs-Appellants,

v.

FRANK MICELI & SONS REALTY & BUILDING CO., a Corporation, and Travelers Indemnity Company, a Corporation, Defendants,

Travelers Indemnity Company, Respondent.

No. 48336.

Supreme Court of Missouri,

Division No. 2.

May 8, 1961.

Motion for Rehearing or to Transfer to Court en Banc Denied June 12, 1961.

H. Jackson Daniel and Martin Schiff, Jr., Husch, Eppenberger, Donohue, Elson & Jones, Maurice Schechter, St. Louis, for appellants.

Evans & Dixon, John F. Evans, St. Louis, for respondent.

BARRETT, Commissioner.

In this suit, prosecuted at the relation of University City, the individually named plaintiffs are ten owners of residence property in an area known as Mayflower Court, a subdivision in University City platted as McKnight Downs. The defendants are Frank Miceli & Sons Realty and Building Company and the Travelers Indemnity Company. In 1953 Miceli subdivided and platted McKnight Downs and eventually sold the eighteen lots or plots of ground in the subdivision to the individually named plaintiffs, and others, or their predecessors

in title. In connection with the platting of the subdivision, the Municipal Code required the subdivider to make certain improvements. In lieu of final completion of the improvements the subdivider was permitted to post a surety bond. This Miceli did and the Travelers Indemnity Company is his surety in the principal sum of $18,000. There is a drainage ditch across the north and west side of the subdivision and one of the improvements required of Miceli was the paving, grading and concreting of the ditch, within two years. Miceli did not pave the ditch and the consequence has been that large sections, approximately one-fifth to one-third, of the plaintiffs' lots have washed away. The injury to the individual lots varied, the damages were estimated from $1,500 to $3,500, but the total damages to the ten lots was said to be $18,000. The object of this suit, according to the prayer of the petition, is to have the court "declare forfeit the bond issued by the defendant Travelers Indemnity Company and for judgment in accordance with their damages" in the sum of $18,000 against both defendants.

Miceli defaulted, nevertheless, the trial court did not enter judgment against him and the plaintiffs do not complain of the fact upon this appeal. Other than on cross-examination of the plaintiffs' witnesses Travelers Indemnity Company offered no evidence, and at the close of the plaintiffs' evidence offered a separate motion to dismiss the action. The trial court entered this judgment in favor of Travelers Indemnity Company "against each of the plaintiffs as a cause of action is not stated upon the surety bond executed by defendants upon the finding that it does not come within the provisions of Section 522.020, and Section 522.050, R.S.Mo.1949; although upon all other controverted issues, plaintiffs should prevail." Therefore the trial court dismissed the plaintiffs' action with prejudice and they have appealed.

The plaintiffs have briefed and argued the single point that the court erred in dismissing their action "because sections 522.-020, 522.050, 522.080 and 522.150 * * * authorize the plaintiffs, as aggrieved parties, to maintain their action against defendants to forfeit the surety bond." Briefly, the statutes, R.S.Mo.1959, provide that persons injured by the neglect or misfeasance of any officer may proceed against the principal or his sureties in any proceeding authorized by law against such officer "for official neglect or injury." Section 522.010. Sections 522.020 and 522.030, mentioned by the court in its judgment, authorize the prosecution of suits by a "person so suing" in the name of the "obligee named in the bond," or, as here, at the relation of the obligee city. Sections 522.050 and 522.080 provide that "Any other party aggrieved may, in like manner, prosecute an action on such official bond, * * *." And section 522.150 provides that "The provisions of this chapter in relation to suits on official bonds shall apply as well to suits on bonds of executors * * * and others required by law to give bond, with conditions for the performance of any duty or trust, as to suits on bonds of officers; and the persons aggrieved may prosecute suits in the same manner, and with like effect, and shall be subject, in all respects, to the provisions herein contained in respect to suits on official bonds, and the court shall possess the same power in relation to such suits."

The plaintiffs point to these statutes and say that they are "aggrieved parties," that Miceli was a person required by law (the municipal code) to give bond, that the bond was executed to secure the faithful performance of his obligation to pave the drainage ditch and having failed to do so they meet the requirements of these statutes and are entitled to maintain this action.

The respondent bonding company contends that these statutes are not applicable "to the type of bond involved" and that plaintiffs acquired no rights by reason of the statutes to recover on the bond. The respondent says that these statutes apply only to "official bonds" insuring faithful performance of the duties of public officials

and quasi public officers such as executors. Section 522.300 permits persons "furnishing material or performing labor" to sue on the bonds of contractors performing public works for the state, county or cities. The respondent contends that the bond involved here is a "public improvement bond" to secure completion of a public work and is therefore governed by section 522.300 but that plaintiffs may not maintain the action under that section because their claim is not for labor or materials furnished. And, finally, the respondent contends that the plaintiffs are not "obligees or beneficiaries under the bond" and may not maintain an action against the surety for damages "on the theory of breach of contract of the principal." In summary, the respondent contends that the purpose of this bond is to indemnify "the city alone" against the duty and expense of providing drainage or sewers and that only the city as sole obligee could enforce it.

After thus, perhaps unnecessarily, elaborately setting forth the contentions of the parties, it is not essential to a determination of this appeal to consider the history and applicability of the statutes. It is assumed for the purposes of this opinion, if the plaintiffs have a cause of action, that they could avail themselves of the remedy afforded by the statutes. See and consider Cooper v. Massachusetts Bonding & Ins. Co., 239 Mo.App. 67, 186 S.W.2d 549; State ex rel. Patterson v. Collins, Mo.App., 172 S.W.2d 284, 289; City of Chillicothe ex rel. Matson v. Raynard, 80 Mo. 185; 63 C.J.S. Municipal Corporations § 1026, p. 623, § 1172, p. 858 and the annotations 47 A.L.R. 5, 170 A.L.R. 1299. It is also sufficient for the purposes of this opinion to summarily say that section 522.300, despite the descriptive catch phrase "Bonds Of Contractors For Public Works," affords relief to "those persons furnishing labor and material on public work, which cannot be subjected to a mechanic's lien" (City of St. Louis, to Use of Stone Creek Brick Co. v. Kaplan-McGowan Co., 233 Mo.App. 789, 794, 108 S.W.2d 987, 989; Camdenton Consolidated School District, etc. v. New York Casualty Co., 340 Mo. 1070, 104 S.W.2d 319) and has no bearing on this action or its subject. The plaintiffs' basic difficulty here, as in several of the actions brought under these statutes (to illustrate see State ex rel. Funk v. Turner, 328 Mo. 604, 42 S.W.2d 594), is that they have not established a substantive cause of action.

Miceli, admittedly, did not pave the drainage ditch and the city has not attempted to compel performance of his contract, nor has the city taken any action on the bond. In addition to the action's being instituted at the relation of the city, the city attorney and the city engineer were the plaintiffs' principal witnesses. The plaintiffs offered two types of proof to establish the damages to each of the ten lots. First, a witness described the erosion and injury to each lot, the measures necessary to correct the injury and then the witness testified to the cost of repairing the loss. To illustrate, the Schwartz lot lost a strip of ground 20 by 30 feet by erosion and the cost to that lot of paving the ditch, replacing and leveling the dirt was said to be $2,712, and to this was added $350 for sodding the yard and $150 for a fence. Second, the plaintiffs proved the total value of their properties on the assumption that the improvements had been made and the value without the improvements. In the case of the Schwartzes the value of their property with the paved channel was $27,000, without the paved ditch its value was $23,000.

The ordinance, under which the subdivision was platted, provided that "No subdivision plat shall be approved by either the planning commission or by the council unless it conforms to the following minimum standards and requirements." The subdivider was to make certain improvements but in lieu of final completion and before approval of his plat "the subdivider may post a surety bond, approved by the council, *which bond will insure to the city that the improvement will be completed* by the subdivider within two years after the final approval of the plan. *The amount of*

*the bond shall not be less than the estimated cost of improvements,* and the amount of the estimate must be approved by the director of public works. If the improvements are not completed within the specified time, *the council may use the bond or any necessary portion thereof to complete same."* Also under the ordinance, the subdivider was required, according to approved standards and specifications, to "install storm sewers to provide drainage for the development."

On May 18, 1953, University City enacted an ordinance approving the platting of McKnight Downs and attached to the ordinance is the "Land Subdivision Improvement Bond" with Miceli as principal and the Travelers Indemnity Company as surety. The bond recites that the principal and surety "are held and firmly bound unto the City of University City" in the sum of $18,000. Among other things, the bond recites that whereas the principal "proposes to improve and develop a certain tract of land" and has filed a proposed subdivision and plat "showing certain improvements," including "storm water sewers," the principal in lieu of completion of the improvements has filed this "Surety Bond" in favor of the city. It is then recited that this bond "shall indemnify said City and *secure to said City the actual construction of such improvements* and utilities *in a manner satisfactory to said City,* in the event said Principal shall fail to install said improvements and utilities within two (2) years." (Italics supplied throughout the quotations.) While the bond is in the principal sum of $18,000, the director of public works informed Miceli that it "may be broken down into three bonds as follows:" for construction of pavement "$11,500, construction of sidewalks $3,000, and "for construction of creek paving $3,500.00."

As previously indicated, "in a proper case" third persons, for whose benefit or protection a contract has been made by a municipal corporation with a private contractor, may maintain an action on the contract (63 C.J.S. Municipal Corporations § 1026, p. 623) and this includes, of course, a bond "to secure the performance of a municipal improvement contract." 63 C.J.S. Municipal Corporations § 1172, p. 858. It is not necessary that the property owners be named as obligees, the problem is whether the contract and bond were for their benefit and protection. Statutes and bonds, as those involved here, are not, however, a substitute for public liability insurance and in the absence of specific agreement do not cover the principal contractor's tort liability to adjoining property owners or other third persons. 63 C.J.S. Municipal Corporations § 1172, p. 858; annotation 67 A.L.R. 990; State ex rel. Leatherman v. Harris, 229 Mo.App. 304, 77 S.W.2d 846; Kansas City ex rel. Blumb v. O'Connell, 99 Mo. 357, 12 S.W. 791; Gerber v. Kansas City, 304 Mo. 157, 263 S.W. 432.

There is some analogy in the cases, but tort liability aside, the contractor, here Miceli, and his surety could contract to pay for any injury to adjoining property. 63 C.J.S. Municipal Corporations § 1259(2), p. 994. The difficulty here is that they have not done so and the contract, ordinance and bond are not reasonably subject to the construction that they were intended for the protection of adjoining property owners. The ordinance required a bond, in lieu of completion of improvements, in a sum not less "than the estimated cost of improvements," which bond "will insure to the city that the improvements will be completed." In the event the improvements were not completed, the council was authorized to resort to the bond "to complete same." The bond, plainly, indemnified and "secure(d) to said City the actual construction of such improvements * * * in a manner satisfactory to said City." The improvements, and in a sense the contract and bond, were for the benefit of property owners in the subdivision, but the contract and bond did not in terms protect third persons or adjoining owners against either torts or breach of contract (Compare Schnaier v. Bradley Contracting Co., 181

App.Div. 538, 169 N.Y.S. 88) and they are not reasonably subject to the construction that the parties intended that they should indemnify these plaintiffs for these particular injuries or losses. City of St. Louis v. G. H. Wright Contracting Co., 202 Mo. 451, 101 S.W. 6; Royal Indemnity Co. v. Independence Indemnity Co., 9 Cir., 29 F.2d 43. Compare Cooper v. Massachusetts Bonding & Insurance Co., supra; Hardware Dealers Mutual Ins. Co. v. R. H. Hidey, Inc., 349 Mich. 490, 84 N.W.2d 795, and see Coley v. Cohen, 289 N.Y. 365, 45 N.E.2d 913, and Freigy v. Gargaro Company, Inc., 223 Ind. 342, 60 N.E.2d 288.

For these indicated reasons the judgment is affirmed.

BOHLING and STOCKARD, C.C., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.