STATE ex rel. State of Missouri, MIS-
SOURI DEPARTMENT OF
AGRICULTURE, et al., Relators,

v.

The Honorable James F. McHENRY,
Judge of the Circuit Court, 19th
Judicial Circuit, Respondent.

No. 66078.

Supreme Court of Missouri,
En Banc.

April 2, 1985.

**180**

Edwin H. Steinmann, Jr., Asst. Atty. Gen., Jefferson City, James F. Gunn, F. Craig King, Jr., St. Louis, for relators.

Lori J. Levine, Jefferson City, Larry Seckington, Bruce H. Stoltze, Des Moines, Iowa, for respondent.

BLACKMAR, Judge.

This case presents important questions of sovereign immunity and official immunity in claims based on the Grain Dealer's Law (Ch. 276, RSMo) and the Missouri Grain Warehouse Law (Ch. 411, RSMo).[1]

IGF Insurance Company is organized under the laws of Iowa. It executed a warehouseman's bond (§ 411.275) on August 1, 1979 and a Grain Dealer's bond (§ 276.426) on April 3, 1981 to secure the operations of Ira Paul Smith and Irene Smith, d/b/a Westboro Elevator, Westboro, Missouri.

IGF on October 18, 1982 filed suit in three counts in the Circuit Court of Cole County, Missouri, naming as defendants (1) the State of Missouri, (2) "Missouri Department of Agriculture," (3) James B. Boillot individually and in his official capacity as Director of the Missouri Department of Agriculture,[2] (4) "Missouri Division of Grain Inspection, Weighing and Warehousing," and (5) Tommy Hopkins Individually and in his official capacity as Director of the division last named.[3] Count I sought a declaratory judgment "construing the rights and duties under the [warehouseman's] bond." Count II sought a similar declaration as to the grain dealer's bond. Counsel made it clear at oral argument that IGF is trying to avoid liability on the bonds given for the protection of the Smiths' customers, because of alleged deficiencies in the performances of the state and its officials.[4] Count III seeks money judgment against all defendants in the amount of $113,000 in connection with the warehouse bond, and $84,000 in connection with the Grain Dealer's bond, together with interest, costs and attorneys' fees.

The defendants sought a writ of prohibition in the Court of Appeals, Western District, and a provisional rule was issued. Even though the provisional rule extended to the entire action, the state and its agencies do not challenge the declaratory judgment prayer in Counts I and II as to them,

1. Both chapters were extensively amended in 1980 and 1981. References are to the 1984 Supplement to RSMo unless otherwise indicated.

2. Boillot did not take office under this present appointment until January 12, 1981. The petition refers to events during 1979 and 1980, during which time John G. Runyon was director. Boillot left office January 25, 1985.

3. Hopkins did not assume his present position until November of 1981.

4. Under § 411.275–7, a surety desiring to cancel a warehouseman's bond must give 90 days notice to the director, in writing. The cancellation does not affect liability already accrued, or liability accruing within the 90-day period. Section 276.426–4 imposes a similar requirement as to grain dealer's bonds. There is no statement in the petition that such notice was given as to either bond.

but do seek prohibition against the claims made in Count III. The individual defendants ask prohibition as to all counts.

Following briefing and argument before an expanded panel the majority of the Court of Appeals voted to quash the preliminary rule summarily and without opinion. Three judges dissented from the summary disposition, and one disagreed with the result. We granted transfer because of the importance of the case, and now take it as though we had issued our own provisional rule. We make the provisional rule absolute as sought by the defendants.

### I.

It is first argued that the trial court, in considering and overruling the motions to dismiss, was acting in the exercise of its jurisdiction, and that any error may be corrected by appeal. *State ex rel. Morasch v. Kimberlin,* 654 S.W.2d 889 (Mo. banc 1983) is cited for the proposition that the writ of prohibition is not available to correct the possibly erroneous failure to dismiss a case. The respondent argues that the cases should proceed through the discovery and trial stages.

*Morasch* should not be mechanically applied to cases in which substantial questions of sovereign immunity or official immunity are presented. "Immunity" connotes not only immunity from judgment but also immunity from suit. *State ex rel. New Liberty Hospital District v. Pratt,* 687 S.W.2d 184 (Mo. banc 1985); *State ex rel. Eli Lilly & Co. v. Gaertner,* 619 S.W.2d 761, 763, fn. 5 (Mo.App.1981). Immunity claims have jurisdictional aspects. It is not always satisfactory to leave a case pending against a public agency or a public officer, with prospects for burdensome discovery and trial, simply because the circuit court has overruled a motion to dismiss. There are undoubtedly cases in which the issue of immunity depends on factual issues which cannot be effectively determined short of trial, but there are also cases in which an initial inquiry may demonstrate that immunity exists as a matter of law, so as to lay

the foundation for the issuance of an initial writ. The decision is a matter of discretion. It is also appropriate to require a litigant who sues the state or its officers to file a petition demonstrating a viable theory of liability. *Sherrill v. Wilson,* 653 S.W.2d 661 (Mo. banc 1983).

### II.

There is no authority for a suit against the state of Missouri for money damages in the manner sought to be stated in Count III. The Department of Agriculture and the Division of Grain Inspection are agencies of the State of Missouri. If they are suable entities at all, they partake of the state's sovereign immunity.

The respondent, desperately seeking authority, cites *V.S. DiCarlo Construction Co. v. State of Missouri,* 485 S.W.2d 52 (Mo.1972). There the legislature had specifically authorized a construction contract. This Court held that the legislature necessarily intended for the state to pay the contract price, and impliedly consented to the liquidation of the contractor's claim in a judicial proceeding. There was, then, consent to the suit. IGF argues that the statutory requirements for warehouse and grain dealers' bonds, payable to the State of Missouri for the benefit of persons dealing with the principal, represented a contractual obligation analogous to that of *DiCarlo.* The analogy is inappropriate. In *DiCarlo* the state intended to make payment for services rendered. Here there is no indication whatsoever that the legislature intended for the state to make any payment whatsoever, or that it stand in the shoes of the surety if it be determined that state officials and employees have not performed their duties. The statutory indication is strongly to the contrary. Section 276.546.

IGF next argues that state regulation of warehouses and grain dealers is a "proprietary" rather than a "governmental" function. The proprietary-governmental dichotomy applies only in the law of municipal corporations, and not to activities

of the state.[5] The legislature, in § 537.600, RSMo 1978, has mandated the restoration of sovereign immunity as it existed prior to our decision in *Jones v. State Highway Commission*, 557 S.W.2d 225 (Mo. banc 1977). We are precluded by the recent legislation from making extensions. *Bartley v. Special School District*, 649 S.W.2d 864 (Mo. banc 1983).

■ The regulation here in issue, moreover, is manifestly governmental. The interest of the state in regulating grain marketing facilities was recognized in *Munn v. Illinois*, 4 Otto 113, 94 U.S. 113, 24 L.Ed. 77 (1876). § 411.012, RSMo 1984 Supp. states that Ch. 411 "constitutes an exercise of state policy and regulatory power for the purpose of enhancing grain production and marketing." The statutes exist, not purely in the interest of persons in the grain trade, but principally because of the public's interest in an abundant food supply.

■ The doctrine of sovereign immunity was designed to protect the public treasury against the kind of claims sought to be maintained here.

The relator limits its assertion of immunity for the state and its agencies only to Count III of the petition. Our absolute writ will be limited to that count, insofar as these defendants are concerned. We of course express no opinion as to whether Counts I and II are properly stated, or as to their substance.

### III.

The defendant Boillot is Director of the Department of Agriculture. He is appointed by the governor, subject to confirmation by the Senate, and reports directly to the governor. (Mo. Const., Art. IV, sec. 35). Chapters 276 and 411 expressly name the director as the official responsible for administering the Grain Dealer's and Warehouse statutes.

Our decisions consistently protect public officers from having their official performance called into question through the medium of private damage suits. Recent cases include *Kanagawa v. State*, 685 S.W.2d 831 (Mo. banc 1985) (operation of penal institutions); *Sherrill v. Wilson*, 653 S.W.2d 661 (Mo. banc 1983) (operation of state hospital); *Jackson v. Wilson*, 581 S.W.2d 39 (Mo.App.1979) (design and construction of state parks).

The respondent seeks to distinguish these cases by asserting that Boillot's duties under Chapters 276 and 411 are "ministerial." This contention will not stand analysis. Initial reliance is placed on § 411.271, requiring the director to make examinations and inspections at least annually, and to take action against licensees found not to be in compliance, but IGF's petition in the trial court states that examinations were made more often than yearly during the times referred to in the petition. The complaint rather, is that Boillot failed to take action asserted to be indicated by the inspections, in violation of the provisions of § 411.271.4,[6] which respondent characterizes as "mandatory."

■ The statutes, however, afford the director wide discretion. He may re-

5. *State ex rel. New Liberty Hospital District v. Pratt*, 687 S.W.2d 184 (Mo. banc 1985). A school district enjoys sovereign immunity, and there is no need to invoke the proprietary-governmental analysis. *Rennie v. Belleview School District*, 521 S.W.2d 423 (Mo. banc 1975); *Smith v. Consolidated School District*, 408 S.W.2d 50 (Mo. banc 1966). Counties also enjoy sovereign immunity. *Wood v. County of Jackson*, 463 S.W.2d 834 (Mo.1971)—plaintiff injured in an accident on a bridge; *Payne v. County of Jackson*, 484 S.W.2d 483 (Mo.1972).

6. Section 411.271.4 reads as follows:
Upon completion of any examination which reveals a failure to comply with this chapter or regulations promulgated hereunder, the director or any warehouse auditor, within a reasonable time, shall present a written discrepancy report to the warehouseman, his employee or agent. The report shall specify the areas of noncompliance and shall give a specific period within which corrective action is to be taken. A report of that corrective action shall be sent to the director. If after further examination, the discrepancy still exists, the director shall suspend the warehouseman's license until the warehouseman has corrected the discrepancy.

quire an examiner to remain at the warehouse (411.070.1(5)); may take steps to require additional bond; (411.281, RSMo 1978); or may "at his discretion," suspend, annul, revoke or refuse to renew" the license (411.283.4, RSMo 1978). This latter action contemplates a hearing before the director and judicial review. (411.283.5, RSMo 1978). The statutes must be read as a whole. So read, they manifestly call for the exercise of the director's judgment as to the action to be taken in a particular situation. He may surely consider the degree of violation shown, the availability of other facilities in the area, the urgency of the situation, and other appropriate circumstances. The use of "shall" in § 411.271.4 statutes does not change the discretionary nature of the director's authority. *Cf. State ex rel. Rogersville Reorganized School District v. Holmes,* 253 S.W.2d 402 (Mo. banc 1952).

Chapter 276 likewise manifests discretion on the part of the director. One alternative is to bring an action in court in the name of the state. (276.406.2(7.).) The director may require additional bond (276.-436.4.), seek injunctive relief (276.486.), or, on verified complaint, suspend or revoke a grain dealer's license (276.491.) This list of alternatives is not complete.

The respondent cites the case of *State ex rel. Funk v. Turner,* 328 Mo. 604, 42 S.W.2d 594 (1931) for the proposition that the duties of the (then) banking department in regard to bank examination are "ministerial," and argues that Chapters 276 and 411 are comparable. The barest examination of that case shows that it is of no benefit to the respondent but, by contrast, supports the relator's position very strongly. Judge Westhues' opinion makes it very clear that the only mandatory requirement was that of periodic examination, with inquiry into the items detailed in the statute. The Court specifically stated that the length of time occupied in examination and the character and extent of the examination are matters within the discretion of the banking department. The bottom line was that a verdict for the plaintiff was reversed on a holding that a bank examiner was not subject to civil action for failure to discover embezzlement. The court said 42 S.W.2d at p. 600:

> The position of the officers of the banking department would indeed be a perilous one if they were to be held liable to all subsequent depositors after an examination, on the mere showing of a complete audit, which disclosed forgeries or embezzlements to have existed at the time the examination was made. It would be unwise and unjust to establish such a rule of law....

IGF specifically alleges that the individual defendants should have furnished it copies of the periodic inspections and reports. Nothing in the statute requires that these be furnished, or serves as basis for civil action if reports are not furnished. Disclosure, rather, is a matter of discretion requiring written application and determination by the director that the applicant is entitled to receive the information. §§ 276.551.1, 411.180.3.

 It is also argued that the Director is obliged to furnish bond (§ 411.-050), and that this requirement connotes liability to persons damaged by his failure to perform his statutory duties. The bond exists only to secure legal obligations otherwise established. *Motley v. Callaway County,* 149 S.W.2d 875 (Mo.1941). The bond is not insurance. The surety is free to proceed against the principal for indemnity. It follows that the same principles of immunity apply, whether or not there is a bond. It might be argued that the Director could be liable on his bond if he failed to account for monies coming into his hands or knowingly allowed a warehouse to function without any bond whatsoever. The bond does not enlarge liability for performance of discretionary duties, or narrow the scope of official immunity.

 Respondent argues that Hopkins is a "mere employee" who is not entitled to official immunity. This contention is refuted by *Kanagawa v. State, supra; Sherrill v. Wilson, supra; State ex rel. Funk v. Turner, supra,* and many other cases.

*Kanagawa* also reaffirms the long line of authority holding that the doctrine of respondeat superior does not apply to make public officials liable for the acts of their subordinates.

██ The other problem with the claim against Hopkins is that IGF relies solely on the statutory enumeration of duties as a basis for liability. Although Hopkins as a division director is an immediate subordinate of the director, his office is not mentioned in the governing statutes. No statutory duties, then, are imposed on him or his office, and the petition is silent as to his present participation. Nothing in the plaintiff's claim in the trial court shows any basis for holding Hopkins liable individually.

██ Nor is there any basis for allowing Counts I and II to pend as to Boillot and Hopkins. Boillot is no longer in office, and Hopkins has no statutory duties.

██ We of course are obliged to construe the petition liberally, accepting all properly pleaded allegations as true. Having done so, we conclude that it is appropriate to make the writ of prohibition absolute in the respects in which the trial court's jurisdiction is challenged, in order to protect the state and its functionaries from possibly burdensome litigation in which the plaintiff has demonstrated no basis for recovery, and to afford them the substantial benefits of official and sovereign immunity. The petition seeks to establish a judicial scrutiny over an executive department and over its director. This scrutiny is the responsibility of the executive and the legislative branches.

The provisional rule in prohibition is made absolute as to Boillot and Hopkins. As to the other defendants it is made absolute as to Count III but quashed as to Counts I and II because not advanced by the relator as to these counts.

RENDLEN, C.J., and WELLIVER, HIGGINS, GUNN and BILLINGS, JJ., concur.

DONNELLY, J., concurs in separate opinion filed.

DONNELLY, Judge, concurring.

In *State ex rel. Morasch v. Kimberlin*, 654 S.W.2d 889, 891 (Mo. banc 1983), this Court held that prohibition will lie to prevent an excess of jurisdiction but "that we should not continue the unfettered use of the writ of prohibition to allow interlocutory review of trial court error."

In *State ex rel. McNary v. Hais*, 670 S.W.2d 494, 497 (Mo. banc 1984), this Court held that prohibition will lie where "[r]elators do not have adequate remedy by way of appeal."

In this case, sovereign immunity raises the question of jurisdiction and prohibition will lie.

I concur.