

# SUPREME COURT OF MISSOURI
## en banc

| | | |
|---|---|---|
| CHRISTINA FORESTER, | ) | *Opinion issued July 20, 2023* |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | No. SC99928 |
| | ) | |
| CRYSTAL MAY, | ) | |
| | ) | |
| Respondent. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF PHELPS COUNTY
The Honorable John D. Beger, Judge

Christina Forester appeals the circuit court's judgment dismissing her petition for the wrongful death of her granddaughter on grounds defendant Crystal May is entitled to official immunity and the petition failed to allege sufficient facts to prove causation. Ms. Forester claims the circuit court erred in sustaining Ms. May's motion to dismiss Ms. Forester's petition because the petition alleges facts that, if true, were sufficient to prove Ms. May breached her duty to perform the ministerial task of completing and emailing a form within 72 hours of beginning an investigation, which demonstrates her claim comes within an exception to the official immunity doctrine. She also asserts the circuit court erred in holding she did not adequately plead facts to prove causation because Ms. May did not assert a failure to plead causation in her motion to dismiss. This Court

finds the petition's factual allegations, taken as true, establish Ms. May is immune from suit as a matter of law. The petition, therefore, failed to state a claim upon which relief can be granted. The circuit court's judgment is affirmed.

**Factual and Procedural Background**

In November 2019, the children's division of the Missouri department of social services received a child abuse and neglect hotline call. The caller alleged M.S., a child under the age of two years, was being abused or endangered by her parents. The caller expressed concern M.S. was exposed to drugs because the father had "been so high that the child has walked in the road toward traffic." The children's division assigned Ms. May, a children's division caseworker, to respond to the hotline call.

Ms. May attempted to contact M.S.'s parents at their home twice on November 6 and once on November 7 and 9 but was unsuccessful. Because she had been unable to contact either parent, Ms. May sent a letter to the child's father, requesting he call her. She made no further attempts to contact M.S.'s parents until December.

On December 5, 2019, the children's division received a second hotline call, this time from the Rolla police department, alleging M.S. was being abused or endangered by her parents. The call was accepted as a child abuse and neglect report and designated a "level 1" priority, which required a face-to-face meeting between Ms. May and the child within three hours. Ms. May immediately began an investigation that included visiting M.S.'s home, contacting law enforcement, and collecting physical evidence.

Within the required three hours, Ms. May arrived at M.S.'s home, where she found law enforcement officers, including members of a drug task force, conducting a search of

the home.  The law enforcement officers informed Ms. May they had a warrant to search the home and believed the father was involved with a recent drug overdose.  Inside the home, the officers found narcotics in M.S.'s shoes and in a candy bowl.  Ms. May reported the parents had care, custody, and control of M.S. at the time of these unsafe conditions.  She also noted M.S. had "significant injuries to her person[]."

Later that day, Ms. May met with M.S.'s parents at the Rolla police department.  They denied any drug use but agreed to take drug tests and to allow M.S. to be tested for the presence of drugs.  The next day, Ms. May met with M.S.'s parents and M.S.'s paternal grandmother for a "team decision making" meeting.  The parents and paternal grandmother agreed M.S. would stay with her paternal grandmother until the results of the drug tests were available, at which time they would meet again.  The parents and paternal grandmother also agreed the parents would have no unsupervised visits with M.S. while the tests were pending.

Ms. May received the test results on December 11, 2019.  The parents' results were negative, but M.S. tested positive for opiates, morphine, and heroin.  Ms. May attempted to contact the mother on December 11 and 12, and twice on December 17 but was unsuccessful.  On December 20, 2019, Ms. May received a voicemail from the mother and spoke to her later that day.  Ms. May stated "it may be possible" for M.S. to return home notwithstanding her positive test but Ms. May wanted to have another team decision making meeting first.  She asked the mother "if it would be okay" if M.S. continued to stay with her paternal grandmother "on the safety plan" until the meeting.  Ms. May did not

3

attempt to contact the father, paternal grandmother, or law enforcement regarding M.S.'s positive drug tests.

On December 21, 2019, officers from the Rolla police department discovered M.S. at her parents' home unconscious and not breathing. The officers were unable to resuscitate M.S., and she was pronounced dead at Phelps Health. After conducting an autopsy, the medical examiner's office concluded M.S. died from a fentanyl overdose and determined her death was a homicide. Her parents pleaded guilty to first-degree endangering the welfare of a child.

M.S.'s maternal grandmother, Ms. Forester, filed a wrongful death suit against Ms. May. She alleged Ms. May owed M.S. a ministerial duty to make a SAFE CARE provider referral by completing a CD-231 form and emailing it to a particular email address no later than December 8, 2019. Ms. Forester further alleged Ms. May failed to make such a referral until five months after M.S. died, and her failure to do so resulted in M.S.'s death.

Ms. May filed a motion to dismiss for failure to state a claim, asserting the allegations of Ms. Forester's third amended petition, taken as true, established the affirmative defense of official immunity and failed to establish an exception to the defense. After the motion was fully briefed and argued, the circuit court entered a judgment sustaining Ms. May's motion and dismissing Ms. Forester's petition with prejudice. The circuit court found the allegations established Ms. May was entitled to official immunity and failed to allege sufficient facts establishing Ms. May caused M.S.'s death. Ms. Forester appealed. This Court granted transfer after opinion by the court of appeals. Mo. Const. art. V, sec. 10.

4

**Standard of Review**

When a circuit court sustains a motion to dismiss for failure to state a claim, this Court reviews the circuit court's ruling *de novo*. *R.M.A. by Appleberry v. Blue Springs R-IV Sch. Dist.*, 568 S.W.3d 420, 424 (Mo. banc 2019). When considering whether a petition states a claim upon which relief can be granted, the Court reviews the plaintiff's petition "to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause of action that might be adopted in th[e] case." *Bosch v. St. Louis Healthcare Network*, 41 S.W.3d 462, 464 (Mo. banc 2001). In so doing, the "Court must accept all properly pleaded facts as true, giving the pleadings their broadest intendment, and construe all allegations favorably to the pleader." *R.M.A.*, 568 S.W.3d at 424.

Furthermore, "[a] motion to dismiss based on an affirmative defense may be sustained if the defense is irrefutably shown by the petition." *Huch v. Charter Commc'ns, Inc.*, 290 S.W.3d 721, 724 (Mo. banc 2009) (quoting *Elam v. Dawson*, 156 S.W.3d 807, 808 (Mo. App. 2005)). As a consequence, a circuit court's judgment sustaining a motion to dismiss will be affirmed if the petition's factual allegations, taken as true, establish a defendant is entitled to official immunity.

**Petition Establishes Official Immunity**

Ms. Forester claims the circuit court erred in dismissing her petition because Ms. May owed M.S. a ministerial duty to make a timely SAFE CARE referral and had no official immunity for her failure to do so in that she lacked any discretion about whether, when, or how to make such a referral. The issue presented in this appeal, therefore, is

5

whether the facts pleaded in Ms. Forester's petition, taken as true, establish Ms. May is entitled to official immunity for her failure to make a timely SAFE CARE referral.

"Official . . . immunity protects public officials sued in their individual capacities from liability for alleged acts of negligence committed during the course of their official duties for the performance of discretionary acts." *State ex rel. Barron v. Beger*, 655 S.W.3d 356, 360 (Mo. banc 2022) (per curiam) (alteration in original) (quoting *State ex rel. Alsup v. Kanatzar*, 588 S.W.3d 187, 190 (Mo. banc 2019)). "'Immunity' connotes not only immunity from judgment but also immunity from suit." *Alsup*, 588 S.W.3d at 190 (quoting *State ex rel. Mo. Dep't of Agric. v. McHenry*, 687 S.W.2d 178, 181 (Mo. banc 1985)). Therefore, when the factual allegations of a petition establish a public employee's challenged actions were within the scope of her official duties and there is no allegation of malice, the defendant may invoke the affirmative defense of official immunity in a motion to dismiss for failure to state a claim. *See id.* at 191 (holding a public official is entitled to official immunity "so long as she was acting within the scope of her authority and without malice"). To survive such a motion to dismiss, a plaintiff must plead factual allegations affirmatively establishing an exception to official immunity. *Stephens v. Dunn*, 453 S.W.3d 241, 251 (Mo. App. 2014).

Here, the allegations of the petition establish Ms. May is a public employee and she was acting within the scope of her official duties when she allegedly committed the negligent act and the petition contains no factual allegations that would support Ms. May acted with malice. As a result, Ms. May is entitled to official immunity, as a matter of law, unless Ms. Forester pleaded facts establishing the application of an exception to immunity.

6

This Court has recognized "a narrow exception to the application of the official immunity doctrine – i.e., when a public officer fails to perform a ***ministerial*** duty required of him by law, he may be personally liable for the damages caused." *Alsup*, 588 S.W.3d at 191.

> Generally, a ministerial act has long been defined as merely "clerical." And this Court has noted that a ministerial duty compels a task of such a routine and mundane nature that it is likely to be delegated to subordinate officials. For more than a century, this Court has held that a ministerial or clerical duty is one in which a certain act is to be performed upon a given state of facts in a prescribed manner in obedience to the mandate of legal authority, and without regard to [the public official's] judgment or opinion concerning the propriety or impropriety of the act to be performed. Thus, the central question is whether there is any room whatsoever for variation in when and how a particular task can be done. If so, that task – by definition – is not ministerial.
>
> The task of identifying ministerial acts that fall outside the protections of official immunity is similar to the task of identifying ministerial acts that a writ of mandamus will issue to compel an official to perform. In fact, the test for whether a task is "ministerial" for purposes of a writ of mandamus is precisely the same as the test for whether that task is "ministerial" such that official immunity will not apply. Accordingly, if a writ of mandamus would not have been proper to compel an official to perform an act, it should follow that official immunity protects an official from liability for injuries arising from the performance of that act.
>
> . . . .
>
> The fact that a statute or regulation may confer authority – or even a duty – to act in a given situation says nothing about whether the act authorized or compelled is the sort of ministerial or clerical act to which official immunity does not extend. Thus, the relevant inquiry is not whether the law authorizes, regulates, or requires an action. Instead, it is whether the action itself is ministerial or clerical.

*Barron*, 655 S.W.3d at 360-61 (alterations in original) (internal citations and quotations omitted).

7

Ms. Forester argues this exception applies because she alleges facts in her petition demonstrating that, having begun an investigation, Ms. May had no discretion but to make a SAFE CARE referral by completing a referral form and emailing it to a designated email address within 72 hours. In support, Ms. Forester relies on section 210.146.1, RSMo 2016, and a provision of the children's division's child welfare manual.

Section 210.146.1, RSMo 2016, provides an investigation involving "a child three years of age or younger . . . shall include an evaluation of the child by a SAFE CARE provider, as defined in section 334.950, or a review of the child's case file and photographs of the child's injuries by a SAFE CARE provider." To effectuate section 210.146.1, the children's division's child welfare manual requires "staff" to "complete the SAFE-CARE Provider Evaluation Referral form (CD-231) and send an encrypted email, along with any relevant medical records and photographs to: [a designated email address.]" Dep't of Soc. Servs., Child Welfare Manual, Sec. 2, Ch. 5.3.5 (2019). The manual then directs that children's division staff "**must** complete and submit the CD-231 as soon as possible, but no later than seventy-two (72) hours, after receiving the [child abuse or neglect] report." *Id.* The same section of the manual also states, however, that "if the child has already been seen by, or it is known the child will be referred to a local SAFE-CARE provider, *staff do not need to complete the CD-231 and should follow local referral protocols*." *Id.* (emphasis added). Therefore, the language of the manual granted Ms. May the discretion: (1) to complete and email the form; (2) not to complete the form because "the child has already been seen"; or (3) not to complete the form because "it is known the child will be referred to a local SAFE-CARE provider."

8

Because there was "room . . . for variation in when and how" Ms. May would respond to the reports of abuse, including whether to make a referral at all, her acts were not ministerial. *Alsup*, 588 S.W.3d at 191. Therefore, the factual allegations of Ms. Forester's petition establish Ms. May is entitled to official immunity and fail to establish the ministerial-duty exception to immunity applies.[1]

## Conclusion

Because the allegations of Ms. Forester's petition establish Ms. May is entitled to official immunity, as a matter of law, the petition failed to state a claim upon which relief can be granted. The circuit court's judgment is affirmed.

_____
PATRICIA BRECKENRIDGE, JUDGE

All concur.

---

[1] Ms. Forester raises three additional points on appeal challenging the circuit court's judgment on the basis that it erred in finding she failed to allege facts that, taken as true, establish Ms. May caused M.S.'s death. Because Ms. May's entitlement to official immunity is dispositive of the appeal, it is unnecessary for the Court to address Ms. Forester's additional points on appeal. *See Lisle v. Meyer Elec. Co.,* 667 S.W.3d 100, 107 n.6 (Mo. banc 2023).